■ JOSEPH A. GAZZA et al., Appellants-Respondents, v UNITED CALIFORNIA BANK INTERNATIONAL, Respondent-Appellant, et al., Defendants. (Action No. 1.) UNITED CALIFORNIA BANK INTERNATIONAL, Respondent-Appellant, v JOSEPH A. GAZZA et al., Appellants-Respondents. (Action No. 2.) — Appeal by Joseph and Margaret Gazza, as plaintiffs in Action No. 1 and as defendants in Action No. 2, from so much of an order of the Supreme Court, Suffolk County (McInerney, J.), dated January 21, 1981, as denied their cross motion for summary judgment and granted the branch of United California Bank International's motion which sought to consolidate the actions. Cross appeal by United California Bank International, as defendant in Action No. 1 and as plaintiff in Action No. 2, from so much of the same order as denied the branch of its motion which sought summary judgment. Order modified, on the law, by (1) deleting the provision granting the branch of United California Bank International's motion which sought consolidation and substituting a provision denying that part of the motion, and (2) deleting the provision which denied the Gazzas' cross motion for summary judgment and substituting a provision granting the cross motion to the extent that summary judgment is granted to the Gazzas dismissing Action No. 2 without prejudice to United California Bank International's seeking leave to amend its answer in Action No. 1, and otherwise denying the cross motion. As so modified, order affirmed, without costs or disbursements. In July, 1970, United California Bank International approved a revolving line of credit for Rocke International Corporation in the amount of $500,000. Pursuant to the loan agreement, on July 10, 1970, Joseph Gazza, an officer and director of Rocke, and his wife, Margaret, executed a personal guarantee of Rocke's indebtedness to the bank. Although

the amount of the guarantee was left blank at the time of its delivery, the bank subsequently filled the blank space by inserting the amount of $1,000,000. After a series of loans had been made to Rocke, the bank agreed to raise the line of credit to a higher amount. In January, 1971, after more than $900,000 had been advanced, Rocke defaulted on its obligations and the bank demanded payment from the Gazzas pursuant to their guarantee. In April, 1971, Joseph Gazza executed a $365,000 mortgage on certain real property as security for the guarantee, but in the mortgage instrument the parties explicity reserved all rights or defenses relating to the guarantee. The Gazzas commenced the first of these actions in May, 1973, seeking a declaratory judgment annulling the guarantee and the mortgage on the ground, *inter alia,* that the allegedly fraudulent completion of the guarantee by the bank discharged their liability. In its answer, the bank asserted the defense that the Gazzas "authorized, consented to and ratified" the insertion of the $1,000,000 ceiling in the guarantee, but no counterclaim for recovery under the guarantee was interposed. In March, 1977, the bank finally commenced a separate action on the guarantee, but by then more than six years had elapsed since the default by Rocke and the Gazzas pleaded the Statute of Limitations. In August, 1980, the bank moved for an order (1) consolidating the two actions on the ground that they arose out of the same transactions and involved common questions of law and fact (CPLR 602, subd [a]), and (2) granting it summary judgment in both actions. Annexed to the bank's moving papers was a portion of the deposition of a former bank officer who testified that the guarantee had been left blank to accommodate Rocke's efforts to increase its line of credit. In response, Joseph Gazza submitted an affidavit claiming that he had intended to guarantee Rocke's debts only up to $500,000 and denying that he ever authorized the bank to complete the guarantee with another sum. By cross motion, the Gazzas also sought summary judgment in both actions and contended that the action to enforce the guarantee was time barred. Special Term granted the bank's request to consolidate but denied each party's motion for summary judgment. The court rationalized its consolidation determination by treating the action to enforce the guarantee as a counterclaim in the declaratory judgment action, thereby tolling the Statute of Limitations pursuant to CPLR 203 (subds [c], [e]). We agree with Special Term that summary judgment for either side is inappropriate to the declaratory judgment action and to the bank's motion on its own action as well. The fact that the amount of the guarantee was incomplete at its execution does not automatically render the instrument void (see *Deering Milliken v Georgette Jrs.,* 17 AD2d 405), for if the subsequent completion was authorized, the guarantee could be enforced as completed (see Uniform Commercial Code, § 3-115, subd [1]; *First Nat. City Bank v Cooper,* 50 AD2d 518). If the completion was fraudulent, however, liability under the instrument would be discharged (see Uniform Commercial Code, § 3-407, subd [2]; *New Britain Nat. Bank v Baugh,* 31 AD2d 898). On this record, the obscurity of the circumstances surrounding the completion and the factual dispute over the authority for completion suffice to mandate a trial. The remaining issue concerns the correctness of Special Term's order insofar as it denied the Gazzas' cross motion for summary judgment dismissing the action on the guarantee and granted consolidation of both actions. Absent the tolling provisions of CPLR 203 (subds [c], [e]) which, for Statute of Limitations purposes, relate the time of service of counterclaims and amended answers back to the date of service of the original summons, the bank's action would be untimely since it was not instituted within six years after Rocke's default (see CPLR 213, subd 2; *American Trading Co. v Fish,* 42 NY2d 20; *General Phoenix Corp. v Cabot,* 300 NY 87; *Shayne v Reynolds,* 225 App Div 70). The bank contends, however, that the Gazzas' execution of the mortgage in April, 1971

commenced the Statute of Limitations running anew and renders the guarantee action timely. While the giving of security may constitute a sufficient acknowledgment of a debt so as to toll the Statute of Limitations (see *Smith v Ryan,* 66 NY 352; *Scott v Armstrong,* 193 Misc 220; *Miller v Magee,* 49 Hun 610; cf. *Carlos Land Co. v Root,* 282 App Div 349), here, the mortgage contained a provision which was inconsistent with an absolute and unqualified acknowledgment of an existing liability with an intention to pay it, since the parties expressly reserved "whatever rights or defenses, as the case may be, under and by virtue of [the] guarantee" (see *Morris Demolition Co. v Board of Educ.,* 40 NY2d 516). In addition, despite the fact that its motion merely sought consolidation, the bank now argues that the action on the guarantee should be treated as a counterclaim to the Gazzas' original declaratory judgment action so that the time of commencement of the guarantee action will relate back to the date of the original summons (see CPLR 203, subds [c], [e]). Had the bank, in its original answer to the declaratory judgment action, asserted such a counterclaim, it would indeed be deemed interposed as of the time of service of the summons in the action (see CPLR 203, subd [c]; *Styles v Gibson,* 27 AD2d 784; Siegel, New York Practice, § 48) and the result would be similar if leave had been granted to amend the original answer in order to interpose a counterclaim (see CPLR 203, subd [e]; Siegel, New York Practice, § 49). But in this case there has been neither a properly pleaded counterclaim nor leave to amend, and we cannot honor the bank's assertion that the need for those steps should be waived to avoid needless duplication of pleadings. Had leave been sought, Special Term could have evaluated any opposition to the amendment motion and any prejudice the Gazzas might have asserted as being attributable to the omission to plead the counterclaim at an earlier stage (see *Murray v City of New York,* 43 NY2d 400). Special Term's order foreclosed such opportunity and the omission cannot be deemed an insubstantial defect (cf. CPLR 2001). Since the tolling provisions of the CPLR do not at present apply to the bank's action on the guarantee (CPLR 203, subds [c], [e]), the action should be dismissed as time barred. The dismissal should not prejudice an application for leave to amend the answer to assert a counterclaim. Upon such motion, the issue of prejudice may properly be addressed. Lazer, J. P., Mangano, Brown and Niehoff, JJ., concur.